UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYCO INDUSTRIES, INC.,

    Plaintiff,

    v.

BLEPHEX, LLC,

    Defendant.

_____/

Case No. 19-cv-10645

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

# **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [#15]**

## **I. INTRODUCTION**

Before the Court is Defendant's Motion to Dismiss. Defendant asserts that this Court does not have personal jurisdiction over Defendant; there is no case or controversy that needs declaratory judgment; and Plaintiff fails to state facts sufficient to support its claims. For the reasons discussed below, the Court will deny Defendant's Motion.

## **II. FACTUAL BACKGROUND**

Plaintiff Myco Industries, Inc. ("Myco") is a corporation organized and existing under the laws of Michigan. Dkt. No. 9, pg. 2 (Pg. ID 24). Defendant BlephEx, LLC ("BlephEx") is a corporation organized under the laws of Florida

-1-

with its principal place of business located in Tennessee. *Id.* Mr. John Choate is Myco's Chairman. Dkt. No. 20, pg. 9 (Pg. ID 1184). Dr. James Rynerson is BlephEx's owner and President. *Id.* In August of 2012, Dr. Rynerson sought out Mr. Choate to design and develop a prototype for a device that could treat blepharitis. *Id.* at pg. 10 (Pg. ID 1185). Rynerson and Choate formed RySurg LLC ("RySurg"), a Michigan company and the BlephEx's company's predecessor. *Id.* at pg. 10 (Pg. ID 1185). Mr. Choate modified Dr. Rynerson's device design, developed a prototype, and oversaw the manufacture and commercialization of the final product, named the Blephex. *Id.* The Blephex removes debris from the eyelid using the '718 patent method. *Id.* at pg. 11 (Pg. ID 1186). It went to market in 2013. *Id.* Mr. Choate was employed by and served as President of RySurg from December 2012 until January 2014. Dkt. No. 10, pg. 16 (Pg. ID 64). Choate and Rynerson ended their partnership due to financial conflicts. *Id.* Dr. Rynerson then formed BlephEx, LLC to market the Blephex.

BlephEx now sells the BlephEx treatment device that is used by healthcare professionals for the treatment of blepharitis. Dkt. No. 15, pg. 13 (Pg. ID 975). Blepharitis is an eyelid disease characterized by the inflammation, scaling, reddening, and crusting of the eyelid, creating dandruff-like scales on the eyelashes. Dkt. No. 9, pg. 3 (Pg. ID 25); Dkt. No. 20, pg. 10 (Pg. ID 1185). Blepharitis can be anterior or posterior. Anterior blepharitis affects the front edge

of the eyelid where the eyelashes join it, and posterior blepharitis affects the inner edge of the eyelid. *Id.*

From February 20–24 of 2019, both BlephEx and Myco attended the Southern Educational Congress of Optometry ("SECO") conference in New Orleans, Louisiana. Dkt. No. 10, pg. 17 (Pg. ID 65). The SECO conference allows companies to promote and display their goods and service to thousands of optometric professionals from around the world. *Id.* Myco began marketing its AB Max tool in 2019 at the SECO conference. *Id.* The AB Max is a device intended for the treatment of anterior blepharitis only. *Id.* at pg. 25 (Pg. ID 73). Myco showed the AB Max tool and handed out materials explaining the AB Max's functionality and use at the conference. *Id.* According to Plaintiff, Dr. Rynerson approached the Myco booth at the conference and stated that the AB Max infringes on his Blephex patent. *Id.* at pg. 18 (Pg. ID 66). Dr. Rynerson allegedly made this accusation loudly and within earshot of prospective customers. *Id.* Plaintiff alleges that Dr. Rynerson returned to his BlephEx booth and told optometrists that Myco's AB Max was infringing on his patents and that he would take action. *Id.* at pg. 19 (Pg. ID 67).

According to Dr. Rynerson, he approached the Myco booth at the SECO conference and asked Choate if he thought the AB Max might infringe Rynerson's patent. Dkt. No. 15-1, pg. 5 (Pg. ID 996). Rynerson asserts that he did not threaten

to sue anyone for patent infringement. *Id.* He further states that to the best of his recollection, he did not tell doctors and practitioners visiting the BlephEx booth that the AB Max infringed on his patent. *Id.* at pg. 15 (Pg. ID 977).

On March 4, 2019, Plaintiff filed a complaint in this Court. Dkt. No. 1. Plaintiff filed an amended complaint on March 14, 2019. Dkt. No. 14. The amended complaint requests a declaratory judgment of non-infringement, a declaratory judgment of invalidity of the '718 patent, and asserts federal and common law unfair competition claims. *Id.* On March 18, 2019, Plaintiff also filed a motion for a preliminary injunction to enjoin Defendant from making patent infringement allegations and threatening litigation against Plaintiff's potential customers. Dkt. No. 11. Defendant opposed the motion for preliminary injunction on April 8, 2019. Dkt. No. 17. Plaintiff replied on April 22, 2019. Dkt. No. 19. On April 8, 2019, Defendant filed a Motion to Dismiss, asserting that this Court does not have personal jurisdiction over Defendant. Dkt. No. 15. Plaintiff opposed the Motion to Dismiss on April 29, 2019. Dkt. No. 20. Defendant replied on May 13, 2019. Dkt. No. 21.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) governs motions to dismiss. The Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present

plausible claims. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible." *Id.* "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.* A claim will be dismissed "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant has "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twonbly*, 550 U.S. 544, 554 (2007).

## IV. DISCUSSION

1. Personal Jurisdiction

Defendant asserts that this Court does not have personal jurisdiction over it to hear this case because it does not have sufficient contacts with the state of Michigan. Dkt. No. 15, pg. 20 (Pg. ID 982). Plaintiff argues that Defendant has sufficient contacts to support this Court's exercise of personal jurisdiction. Dkt. No. 20, pg. 17 (Pg. ID 1192).

First, this Court will apply Federal Circuit law to the personal jurisdiction issue. The Federal Circuit has held the law of the Federal Circuit governs personal jurisdiction when patent law is central to a plaintiff's claims. *Maxchief Inv. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018). Federal Circuit law holds that personal jurisdiction must comport with the state's long arm statute and with due process under the United States Constitution. *Maxchief*, 909 F.3d at 1137. The Michigan Constitution allows a court to exercise personal jurisdiction to the full extent permissible under the U.S. Constitution. Therefore, the only question this Court must consider is whether the exercise of personal jurisdiction would be consistent with due process. Due process requires a defendant to have sufficient minimum contracts with the forum state so that the suit does not offend traditional notions of fair play and substantial justice. *Id.* The minimum contacts test requires that a defendant have purposefully directed its conduct at the forum state, and the claim must arise out of or relate to the defendant's contacts with the forum. *Id.*

A declaratory judgment claim arises out of the patent holder's contacts with the forum state if those contacts "relate in some material way to the enforcement or the defense of the patent." *Id.* Thus, the minimum contacts inquiry requires the patent holder to engage in some type of enforcement activity in the forum state. *Id.* The Federal Circuit has therefore found minimum contacts when a patent holder sent infringement notice letters to a company doing business in the forum state and

traveled to the forum state to discuss the alleged infringement. *Xilinx Inc. v. Papst Licensing GmbH & Co. KG.*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). The Federal Circuit has also found minimum contacts where the patent holder entered into an exclusive licensing agreement with an entity in the forum state that allowed the licensee to litigate infringement claims against third party infringers of the licensed patents. *Breckenride Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006).

In *Silent Drive, Inc. v. Strong Industries, Inc.*, the Federal Circuit found that the defendants created minimum contacts with Iowa by trying to enforce an injunction against the plaintiff, who was an Iowa resident. 326 F.3d 1194, 120405 (Fed. Cir. 2003). In *Silent Drive*, the defendants sent letters to the plaintiff in Iowa, which specifically named the plaintiff and the location of its headquarters in Iowa. *Id.* In *Maxchief*, the Federal Circuit found that an enforcement letter sent to a lawyer in Tennessee that alleged infringement by a Kansas company (not alleged to operate in Tennessee) constituted a contact with Kansas and not Tennessee. *Maxchief*, 909 F.3d at 1139.

Here, Plaintiff alleges that Dr. Rynerson stated that Myco was infringing its patent at the SECO conference held in New Orleans, Louisiana. Although Dr. Rynerson allegedly made the threat in Louisiana, he directed his threats to a Michigan company. Therefore, case law supports the conclusion that Dr.

Rynerson's actions support a finding of minimum contacts. This is similar to the conclusion of the court in *Maxchief*, which found that enforcement action that occurred in Tennessee towards a Kansas company constituted a contact with Kansas and not Tennessee. Therefore, this Court finds that Defendant has sufficient minimum contacts with Michigan.

The next inquiry of this Court is whether the exercise of personal jurisdiction comports with notions of fair play and substantial justice. "Merely sending notice letters of patent infringement does not satisfy the fair play and substantial justice prong of the personal jurisdiction inquiry, because principles of fair play afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Maxchief Investments Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1139 (Fed. Cir. 2018) (internal quotations omitted). In *Xilinix*, the Federal Circuit found that personal jurisdiction was proper where the patent holder sent notice letters of enforcement to the forum state and visited the plaintiff in the forum state. *Xilinx*, 848 F.3d at 1354.

Plaintiff argues that Defendant has "a myriad" of other contacts with Michigan that satisfy the fair play and substantial justice prong. Plaintiff asserts that Defendant makes regular sales of its products in Michigan, Defendant formerly had a sales representatives in Michigan, Defendant's personnel have traveled to Michigan to conduct certification courses in Michigan, and Defendant has invoked

the jurisdiction of this Court to seek relief for trademark infringement. Dkt. No. 20, pg. 19 (Pg. ID 1194). Defendant contends that it must have engaged in other *enforcement activities* within Michigan in order for this Court's exercise of personal jurisdiction to comport with notions of fair play and substantial justice. Dkt. No. 21, pg. 8 (Pg. ID 1355). "[I]n a declaratory judgment action against a nonresident patent holder, [the Federal Circuit has] consistently required the defendant to have engaged in 'other activities' that relate to the *enforcement or the defense* of the validity of the relevant patents." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1040 (Fed. Cir. 2017) (emphasis added).

The Federal Circuit has held that a defendant is subject to personal jurisdiction in a forum where it has sent cease and desist letters into the forum state and it has an exclusive licensee that conducts business in the forum. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006). The Federal Circuit has also found personal jurisdiction existed where a defendant sent warning letters of patent infringement to the plaintiff in the forum state and entered into an exclusive license agreement regarding its patent in the forum state. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

In this case, Plaintiff alleges that Defendant claimed patent infringement at the SECO conference. Further, Plaintiff asserts that Defendant has multiple interactions with the state of Michigan, including having a sales representative

located in Michigan and conducting certification courses in Michigan—activities that Defendant does not dispute. Defendant's activities with Michigan are similar to the defendants' activities in *Breckenridge* and *Akro* that the Federal Circuit held satisfied the requirements of personal jurisdiction. This Court similarly finds that Defendant's alleged activities with Michigan satisfy notions of fair play and substantial justice. Defendant has had multiple connections with the state of Michigan in various business endeavors and has allegedly accused a Michigan company of patent infringement. For these reasons, the Court finds that the Defendant has sufficient minimum contacts with Michigan, and the exercise of personal jurisdiction over Defendant comports with fair play and substantial justice.

   2.  Declaratory Judgment Claim

Defendant next contends that there is no case or controversy for Plaintiff's declaratory judgment claims. Dkt. No. 15, pg. 24 (Pg. ID 986). Defendant states that Plaintiff's case lacks the immediacy required to obtain a declaratory judgment. *Id.* Defendant asserts that there is no evidence that the AB Max will be used in a manner that could infringe the '718 patent and BlephEx and Dr. Rynerson have not threatened patent infringement litigation or indicated an intent to do so in the near future. *Id.*

The Declaratory Judgment Act states that a court may declare the legal rights and actions "in a case of actual controversy" within its jurisdiction. *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1356 (Fed. Cir. 2013). An "actual controversy" is a case or controversy that is justiciable under Article III of the United States Constitution. *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012). A justiciable controversy must show that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Arkema*, 706 F.3d at 1356. The "test is satisfied when the declaratory judgment plaintiff is put "to the choice between abandoning his rights or risking prosecution." *Id.*

In *Arkema*, the court found that if the intended use of a product is at least arguably infringing and actively encouraged by the declaratory judgment plaintiff, a controversy is sufficiently real. *Id.* at 1359. The *Arkema* court also reasoned that a case was justiciable where the first predicted commercial launch of a product was at least one year away and the plaintiff had already entered into many long-term contracts to supply the product to manufacturers. *Id.*

If a party has been charged with infringement of a patent then there is necessarily a case or controversy. *3M*, 673 F.3d at 1379. However, mere

communication from a patent owner to another party identifying its patent and the other party's product line is not sufficient to create a case or controversy. *Id.*

Here, Plaintiff alleges that Dr. Rynerson charged Plaintiff with patent infringement at the SECO conference. In addition, Plaintiff is advertising the AB Max, offering it for sale, and healthcare professionals have used the AB Max. Dkt. No. 20, pg. 28 (Pg. ID 1203). Taken together, these facts support the conclusion that this case is justiciable and ripe for declaratory judgment. Therefore, this Court will not dismiss Count I of Plaintiff's complaint.

3. Patent Invalidity Claim

Count II of Plaintiff's amended complaint requests this Court enter a declaratory judgment of invalidity of the '718 patent. Dkt. No. 9, pg. 7 (Pg. ID 29). The Count states, in its entirety, that "Myco incorporates the above allegations . . . [t]he claims of the '718 patent are invalid under 35 U.S.C. §§ 102, 103." *Id.*

Defendant argues that Plaintiff's patent invalidity claim fails to comply with basic pleading requirements because Plaintiff does not provide any factual support for why the '718 patent is invalid. Dkt. No. 15, pg. 26 (Pg. ID 988). Plaintiff asserts that its claim is sufficiently detailed. Dkt. No. 20, pg. 30 (Pg. ID 1205).

In *ASUSTeK Computer Inc. v. AFTG-TG LLC*, the Northern District of California denied a motion to dismiss that asserted patent invalidity "for failing to

meet one or more of the conditions and requirements for patentability set forth under 35. U.S.C. §§ 101, 102, 103, and/or 112." No. 5:CV 11-00192-EJD, 2011 WL 6845791, at *13 (N.D. Cal. Dec. 29, 2011). The court's local patent rules required detailed disclosures as to invalidity contentions soon after a patent suit is filed. *Id.* Therefore, the court reasoned that requiring heightened pleading standards for invalidity would circumvent the court's patent local rules. *Id.* The Central District of California has similarly found that patent invalidity claims are not subject to the heightened pleadings standards of *Twombly* and *Iqbal*. *Microsoft Corp. v. Phoenix Sols., Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010). The *Microsoft* court found that it would be incongruous to required heightened pleading when the pleading standard for infringement does not require facts like why the accused product allegedly infringes. *Id.*

However, the District Court of Kansas found that the plaintiff's patent invalidity claim must comply with the pleading standards discussed in *Twombly* and *Iqbal*. *Gemcor II, LLC v. Electroimpact Inc.*, No. 11-CV-2520-CM, 2012 WL 628199, at *2 (D. Kan. Feb. 27, 2012). The court reasoned that Form 18 applies to patent infringement claims and is not an example complaint for a patent invalidity claim. *Id.* The Central District of California reached a similar conclusion in 2012. *Memory Control Enter., LLC v. Edmunds.com, Inc.*, No. CV 11-7658 PA JCX, 2012 WL 681765, at *3 (C.D. Cal. Feb. 8, 2012). In *Memory Control*, the

plaintiff's complaint stated that the "'791 patent [is] invalid for failure to comply with one or more provisions of Title 35 of the United States Code." *Id.* The plaintiff's counterclaim added some specificity by including sections of Title 35 that the plaintiff believed rendered the defendant's patent invalid: §§ 101, 102, 103, and 112.

Here, Plaintiff's amended complaint states the sections of the statute that Plaintiff asserts render the '718 patent invalid: §§ 102, 103, and 112. Section 102 and 103 concern prior art, while Section 112 concerns specification. Like other jurisdictions, the Plaintiff will be required to submit more detailed disclosures regarding its patent invalidity claim. Thus, similar to the courts in *ASUSTeK Computer* and *Microsoft*, this Court finds that Count II of Plaintiff's complaint meets the pleading requirements and will not dismiss Count II.

4. Federal Unfair Competition Claim

Defendant argues that Plaintiff's federal unfair competition claim fails to meet basic pleading requirements because it does not establish that Dr. Rynerson's alleged statements at the SECO conference were introduced into interstate commerce. Dkt. No. 15, pg. 27 (Pg. ID 989). Plaintiff counters that Rynerson introduced his alleged statements into interstate commerce. Dkt. No. 20, pg. 31 (Pg. ID 1206).

To prevail on an unfair competition claim under § 43(a) of the Lanham Act, a plaintiff must allege that a false statement was introduced into interstate commerce, *inter alia*. *Eastman Outdoors, Inc. v. Blackhawk Arrow Co.*, 329 F. Supp. 2d 955, 959 (E.D. Mich. 2004).

Employees are engaged in interstate commerce if they are doing work involving or relating to the movement of persons or things, whether tangible or intangible (including information and data), to any place outside of the state. § 4:3.Engaged in Interstate Commerce, 1 Wage and Hour Law § 4:3. Further, Congress and the courts have given the term "interstate commerce" a very broad definition. 150 FDA Regulation of Products in Interstate Commerce, 1999 WL 34771242. Case law has stated that "[i]nterstate commerce includes intercourse for the purpose of trade which results in the passage of property, persons or messages from within one state to within another state." *Ford Motor Co. v. Fed. Trade Comm'n*, 120 F.2d 175, 183 (6th Cir. 1941); *see also F.T.C. v. Magui Publishers, Inc.*, No. CIV. 89-3818RSWL(GX), 1991 WL 90895, at *13 (C.D. Cal. Mar. 28, 1991) (noting that "'the in or affecting commerce' standard is clearly met where the activities in question affect the passage of property or messages from one state to another.").

Here, Plaintiff alleges that Dr. Rynerson made comments at the SECO conference to various optometrists from around the world. Dkt. No. 9, pg. 5 (Pg. ID 27). These allegations are sufficient to support its claims that Defendant

introduced false statements into interstate commerce. Therefore, this Court concludes that Plaintiff's federal unfair competition claim meets basic pleading requirements and will not dismiss Count III of Plaintiff's complaint.

5.  Common Law Unfair Competition Claim

Count IV of Plaintiff's complaint brings a common law unfair competition claim against Defendant. Dkt. No. 9 pg. 9 (Pg. ID 31). Defendant argues that this Court should dismiss Count IV because the Court lacks personal jurisdiction over Defendant. Dkt. No. 15, pg. 23–24 (Pg. ID 985–86). For the reasons discussed above, this Court has held that it can exercise personal jurisdiction over Defendant. Therefore, the Court will not dismiss Count IV of Plaintiff's complaint.

## V. Conclusion

For the reasons discussed herein, the Court will deny Defendant's Motion. Defendant must file an answer to Plaintiff's amended complaint within 7 days of the entry of this Opinion and Order.

SO ORDERED.

Dated:      June 3, 2019

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 3, 2019, by electronic and/or ordinary mail.

<u>/s/ Teresa McGovern</u>
Case Manager