UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYCO INDUSTRIES, INC.,

Plaintiff,

v.

BLEPHEX, LLC,

Defendant.

_____/

Case No. 19-cv-10645

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING PLAINTIFF'S AMENDED MOTION
FOR PRELIMINARY INJUNCTION [#11], DENYING DEFENDANT'S
MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION [#35], DENYING PLAINTIFF'S MOTION FOR LEAVE TO
SUPPLEMENT PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION [#36], AND DENYING PLAINTIFF'S MOTION TO
CONSOLIDATE PRELIMINARY INJUNCTION HEARING WITH TRIAL
[#54] AS MOOT**

**I. INTRODUCTION**

Before the Court is Plaintiff's Amended Motion for Preliminary Injunction.

Plaintiff requests this Court to enjoin Defendant from making allegations of patent

infringement and from threatening litigation against potential customers of

Plaintiff. Pursuant to E.D. Mich. LR 7.1(f)(2), this Court has determined that oral

argument is not necessary in order to rule on this Motion. For the reasons discussed

below, this Court will grant Plaintiff's Amended Motion for Preliminary Injunction. Defendant, its officers, agents, and those in active concert with it are enjoined from making allegations of patent infringement and threatening litigation against Plaintiff's potential customers. Both parties in this matter also filed Motions for Leave to Supplement their preliminary injunction pleadings. This Court will deny both Motions to Supplement. Lastly, Plaintiff filed a Motion to Consolidate Preliminary Injunction Hearing with Trial. The Court will deny this Motion as moot.

## II. FACTUAL BACKGROUND

Plaintiff Myco Industries, Inc. ("Myco") is a corporation organized and existing under the laws of Michigan. Dkt. No. 9, pg. 2 (Pg. ID 24). Defendant BlephEx, LLC ("BlephEx") is a corporation organized under the laws of Florida with its principal place of business located in Tennessee. *Id.* Mr. John Choate is Myco's Chairman. Dkt. No. 20, pg. 9 (Pg. ID 1184). Dr. James Rynerson is BlephEx's owner and President. *Id.*

In August of 2012, Dr. Rynerson sought out Mr. Choate to design and develop a prototype for a device that could treat blepharitis. *Id.* at pg. 10 (Pg. ID 1185). Blepharitis is an eyelid disease characterized by the inflammation, scaling, reddening, and crusting of the eyelid, creating dandruff-like scales on the

eyelashes. Dkt. No. 9, pg. 3 (Pg. ID 25); Dkt. No. 20, pg. 10 (Pg. ID 1185).
Blepharitis can be anterior or posterior. Anterior blepharitis affects the front edge
of the eyelid where the eyelashes join it, and posterior blepharitis affects the inner
edge of the eyelid. *Id.*

Rynerson and Choate formed RySurg LLC ("RySurg"), a Michigan
company and the BlephEx's company's predecessor. *Id.* at pg. 10 (Pg. ID 1185).
Mr. Choate modified Dr. Rynerson's device design, developed a prototype, and
oversaw the manufacture and commercialization of the final product, named the
Blephex. *Id.* The Blephex removes debris from the eyelid using the '718 patent
method. *Id.* at pg. 11 (Pg. ID 1186).

Dr. Rynerson initially filed a patent on July 24, 2012 to patent the Blephex.
Dkt. No. 11-7, pg. 150 (Pg. ID 720). On September 19, 2014, The Patent and
Trademark Office ("PTO") rejected Dr. Rynerson's first patent application for the
Blephex because it was infringing on a patent that named Grenon as the inventor
(the "Grenon patent"). Dkt. No. 11-7, pg. 150 (Pg. ID 720). The PTO corresponded
with Dr. Rynerson's representatives to discuss the difference between Rynerson's
Blephex and the Grenon patent. Dkt. No. 11-7, pg. 179 (Pg. ID 749). Rynerson's
representatives maintained that the Blephex contacts the inner surface of the eyelid
or eyelid margin. *Id.* The PTO agreed that the claim limitation of contacting the

inner surface of the eyelid was adequate to differentiate the Blephex from the Grenon patent. *Id.*

Dr. Rynerson obtained the patent for the Blephex ("the '718 patent") on May 26, 2015. Dkt. No. 11-6, pg. 2 (Pg. ID 562). It is a process, i.e. "method" patent. *See id.* The patent does not state that it only treats posterior blepharitis. *See* Dkt. No. 11-6. The patent also never states the terms "anterior" or "posterior." However, the patent consistently states that the Blephex is for use with the "inner edge portion of the eyelid margin." *See* Dkt. No. 11-6, pg. 9 (Pg. ID 569) ("the swab having at least a portion thereof configured to access an inner edge portion of the eyelid margin . . . the swab . . . contacting a portion of the eye between the eyelashes and the inner edge of the eyelid margin . . . the method of claim 1 further comprising accessing at least an inner edge portion of the eyelid margin with swab . . . the method of claim 14 further comprising accessing at least an inner edge portion of the eyelid margin with swab . . . while the swab is being moved by the electromechanical device, contacting at least an inner edge portion of the eyelid margin"). Claim 1 of the patent states that what is claimed is:

> A method of treating an eye for an ocular disorder with
> a swab operably connected to an electromechanical device,
> wherein the eye has an eyelid margin and includes a removable
> debris, the method comprising; effecting movement of the swab relative to
> the electromechanical device, the swab having at least a portion
> thereof configured to access an inner edge portion of the
> eyelid margin;

> while the swab is being moved by the electromechanical
> device, contacting a portion of the eye between the eyelashes
> and the inner edge of the eyelid margin that
> includes the removable debris with the swab thereby
> impacting the debris with the swab to remove debris
> from the eye.

Dkt. No. 11-6, pg. 9 (Pg. ID 569). The Blephex went to market in 2013. *Id.* Mr.

Choate was employed by and served as President of RySurg from December 2012

until January 2014. Dkt. No. 10, pg. 16 (Pg. ID 64). Choate and Rynerson ended

their partnership due to financial conflicts. *Id.* Dr. Rynerson then formed BlephEx,

LLC to market the Blephex.

BlephEx now sells the Blephex treatment device that is used by healthcare

professionals for the treatment of blepharitis. Dkt. No. 15, pg. 13 (Pg. ID 975).

From February 20–24 of 2019, both BlephEx and Myco attended the

Southern Educational Congress of Optometry ("SECO") conference in New

Orleans, Louisiana. Dkt. No. 10, pg. 17 (Pg. ID 65). The SECO conference allows

companies to promote and display their goods and service to thousands of

optometric professionals from around the world. *Id.* Myco began marketing its AB

Max tool in 2019 at the SECO conference. *Id.* Plaintiff asserts that the AB Max is a

device intended for the treatment of anterior blepharitis only. *Id.* at pg. 25 (Pg. ID

73). Myco showed the AB Max tool and handed out materials explaining the AB

Max's functionality and use at the conference. *Id.* According to Plaintiff, Dr.

Rynerson approached the Myco booth at the conference and stated that the AB Max infringes on his Blephex patent. *Id.* at pg. 18 (Pg. ID 66). Dr. Rynerson allegedly made this accusation loudly and within earshot of prospective customers. *Id.* Plaintiff alleges that Dr. Rynerson returned to his BlephEx booth and told optometrists that Myco's AB Max was infringing on his patents and that he would take action. *Id.* at pg. 19 (Pg. ID 67).

According to Dr. Rynerson, he approached the Myco booth at the SECO conference and asked Choate if he thought the AB Max might infringe Rynerson's patent. Dkt. No. 15-1, pg. 5 (Pg. ID 996). Rynerson asserts that he did not threaten to sue anyone for patent infringement. *Id.* He further states that to the best of his recollection, he did not tell doctors and practitioners visiting the BlephEx booth that the AB Max infringed on his patent. *Id.* at pg. 15 (Pg. ID 977).

On March 4, 2019, Plaintiff filed a complaint in this Court. Dkt. No. 1. Plaintiff filed an amended complaint on March 14, 2019. Dkt. No. 14. The amended complaint requests a declaratory judgment of non-infringement, a declaratory judgment of invalidity of the '718 patent, and asserts federal and common law unfair competition claims. *Id.* On March 18, 2019, Plaintiff filed the present Amended Motion for Preliminary Injunction to enjoin Defendant from making patent infringement allegations and threatening litigation against Plaintiff's

potential customers. Dkt. No. 11. Defendant opposed the Motion on April 8, 2019.

Dkt. No. 17. Plaintiff replied on April 22, 2019. Dkt. No. 19.

Both parties have moved this Court for leave to file supplemental briefs to support the arguments that they presented in Plaintiff's Motion for Preliminary Injunction. On June 26, 2019, Defendant filed its Motion for Leave. Dkt. No. 35. On July 2, 2019, Plaintiff filed its Motion for Leave. Dkt. No. 36. Both parties filed responses to the other's Motion for Leave on July 10, 2019 and July 16, 2019. Dkt. Nos. 43, 46. The parties filed replies to the Motions for Leave on July 16, 2019 and July 23, 2019. Dkt. Nos. 47, 48. Neither party has shown good cause for filing supplemental briefs on this issue. Further, the Court has reviewed the parties' supplemental pleadings and finds that they are not necessary to consider in its determination of Plaintiff's Motion for Preliminary Injunction. Correspondingly, the Court will deny the parties' Motions for Leave to Supplement.

On August 20, 2019 Plaintiff filed a Motion to Consolidate Preliminary Injunction Hearing with Trial. Dkt. No. 54. Plaintiff states in its Motion that it sought concurrence with Defendant but Defendant did not concur. *Id.* at pg. 5 (Pg. ID 2013). Defendant has not yet filed a response to Plaintiff's Motion to Consolidate. For the reasons discussed below, this Court will grant Plaintiff's preliminary injunction. Therefore, Plaintiff's Motion to Consolidate is moot and this Court will accordingly deny the Motion to Consolidate.

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). A preliminary injunction seeks to "maintain the status quo pending a final hearing regarding the parties' rights." *All. for Mentally Ill of Mich. v. Dep't of Cmty. Health*, 588 N.W.2d 133, 137 (Mich. Ct. App. 1998). Whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540–41 (6th Cir. 2007). The Court must balance four factors in determining whether to grant a request for a preliminary injunction. *Id.* at 542. Those factors are:

(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.

*Id.* In addition, a court should not grant a preliminary injunction where an adequate legal remedy is available. *Pontiac Fire Fighters Union Local 376 v. City of Pontiac*, 753 N.W.2d 595, 600 (Mich. 2008). Applying the above factors, the Court does not find that injunctive relief is appropriate at this time.

## IV. DISCUSSION

1. Likelihood of Success on the Merits

First, the Court must determine whether the movant has demonstrated a strong likelihood of success on the merits. A plaintiff does not have to prove its case in full at the preliminary injunction stage. Rather, "[i]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007).

   a. Patent Infringement Claims

      i. Direct Infringement

Plaintiff first argues that Defendant cannot prove that Plaintiff directly infringes the '718 patent. Dkt. No. 11, pg. 5 (Pg. ID 504). Plaintiff states that it does not infringe Defendant's patent because its AB Max device does not use or perform the infringing method. *Id.* at pg. 22 (Pg. ID 521). Plaintiff states that Dr. Rynerson expressly limited the '718 patent to the treatment of posterior blepharitis. Treatment under the '718 patent must occur "between the eyelashes and the inner edge of the eyelid margin" or "an inner edge portion of the eyelid margin." Therefore, Plaintiff contends that Defendant's '718 patent can only be infringed by

a tool that treats posterior blepharitis. *Id.* at pg. 23–24 (Pg. ID 522–23). Plaintiff

asserts that its AB Max tool is solely for the treatment of anterior blepharitis. *Id.*

Defendant asserts that the '718 patent claims are not limited to treating

posterior blepharitis. Dkt. No. 17, pg. 24 (Pg. ID 1028). Defendant states that the

terms "anterior" and "posterior" were not used during the prosecution of the '718

patent. *Id.* at pg. 25 (Pg. ID 1029). Further, Defendant states that the term "inner

eyelid" appears nowhere in the '718 patent claims and is therefore not a claim

limitation. *Id.* Defendant asserts that Plaintiff is liable for direct infringement

because it has performed or had its agents perform all of the steps of the claimed

method in claim 1 of the '718 patent. *Id.* at 27 (Pg. ID 1031). Defendant asserts

that Plaintiff is also liable for direct infringement by directing its agents and

customers to use the AB Max in a manner intended to infringe at least claim 1 of

the '718 patent. *Id.* at pg. 28 (Pg. ID 1032).

"Direct infringement under § 271(a) occurs where all steps of a claimed

method are performed by or attributable to a single entity." *Akamai Techs., Inc. v.

Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). If more than one

individual is involved in practicing the steps, then a court must determine if the

acts of one are attributable to the acts of the other, such that a single entity is

responsible for the infringement. *Id.* One entity is responsible for another's

performance of a method's steps if "that entity directs or controls [the] others' performance," and "where the actors form a joint enterprise." *Id.*

Defendant submitted Plaintiff Myco's SECO video to lend support to its proposition that Myco instructed its customers to use the AB Max in a way that is intended to infringe the '718 patent. Exh. D.

In the video, Mr. Choate states that the AB Max is for the treatment of anterior blepharitis. He states that the device is for use by doctors. When explaining how to use the device, Choate states, "[doctors] would debride the eyelid margin, outer eyelid margin as appropriate." Mr. Choate further explains that he helped to design the first doctor's treatment for blepharitis, i.e. the Blephex. Mr. Choate also compares the motors on the AB Max and Blephex and states that both devices have the same motor. However, Choate states that the Blephex device only does forward and reverse motion and that the AB Max is an improved device. For example, Mr. Choate asserts that the AB Max has a patent pending pulse mode that is more comfortable and does a better job of cleaning. The video consistently states that the device is for the "anterior eyelid margin," "anterior eyelids," and for "anterior blepharitis."

Defendant argues that by stating that the AB Max is intended to be used to debride the eyelid margin, Plaintiff is instructing its customers to use the AB Max

in a way that is intended to infringe the '718 patent. Dkt. No. 17, pg. 29 (Pg. ID 1033). In the video, Mr. Choate states, "[doctors] would debride the eyelid margin, outer eyelid margin as appropriate." Mr. Choate then repeatedly states throughout the video that the AB Max is for the "anterior eyelid margin," "anterior eyelids," and for "anterior blepharitis." Therefore, this Court does not conclude that Mr. Choate directed its customers to use the AB Max to debride the eyelid margin generally. Mr. Choate consistently states that the AB Max is for debriding the anterior eyelid margin. For these reasons, the Court does not find evidence of direct infringement from Myco's SECO video.

Defendant contends that the term "inner eyelid" appears nowhere in the '718 patent claims and is therefore not a claim limitation. However, the '718 patent routinely describes the swab of the Blephex contacting the "inner edge portion of the eyelid margin." This is effectively describing the treatment of posterior blepharitis, because posterior blepharitis affects the inner edge of the eyelid. Further, adding the "inner edge portion of the eyelid margin" language was necessary in order for the PTO to issue a patent on the Blephex. This supports Plaintiff's argument that the "inner edge" language is material to the '718 patent.

Myco maintains and the record supports the contention that the AB Max is for the treatment of anterior blepharitis. Defendant's Blephex tool, according to the '718 patent, is for use for the treatment of posterior blepharitis. Therefore, for these

reasons, the Court concludes that Myco has demonstrated a strong likelihood of success on its claim that it does not directly infringe the '718 patent.

### ii. Indirect Infringement

#### 1. Active Inducement

Defendant next contends that Plaintiff is liable for indirect infringement pursuant to the doctrines of induced infringement and contributory infringement. Dkt. No. 17, pg. 30 (Pg. ID 1034).

The United States Patent Act states that "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C.A. § 271(b). "To prove inducement of infringement, the patentee must [ ]show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Therefore, Defendant must show that (1) a third party directly infringed the '718 patent; (2) Plaintiff induced those infringing acts; and (3) Plaintiff knew the acts it induced constituted infringement." *See id.* Direct infringement is a required element to establish induced infringement. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012). "To satisfy the direct infringement requirement,

the patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *Id.*

As this Court has determined above, the record does not show that Plaintiff or a third party directly infringed the '718 patent. Further, Mr. Choate's statements at the SECO conference do not demonstrate that Plaintiff induced any infringing acts. For these reasons, the Court concludes that there is a strong likelihood of success on Plaintiff's contention that it did not induce infringement.

### 2. Contributory Infringement

Contributory infringement liability arises when an individual:

> offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

35 U.S.C.A. § 271. To establish contributory infringement liability, the patent owner must show, among other things, that there are no substantial non-infringing uses. 35 U.S.C. § 271(c). "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012).

Defendant asserts that the AB Max has no substantially non-infringing uses because it uses the same tip (swab) as the Blephex. Dkt. No. 17, pg. 31 (Pg. ID 1035). Plaintiff contends that it is not liable for contributory infringement because the AB Max has a substantial non-infringing use—the treatment of anterior blepharitis. Dkt. No. 11, pg. 26 (Pg. ID 525). Plaintiff states that Defendant may argue that doctors could choose to use the AB Max to treat posterior blepharitis. *Id.* at pg. 27 (Pg. ID 526). However, Plaintiff argues that the doctor's choice is not relevant to the issue of contributory infringement. *Id.* Plaintiff cites *In re Bill Lading Transmission and Processing System Patent Litigation* for this proposition. 681 F.3d 1323, 1338 (Fed. Cir. 2012). *In re Bill Lading* concluded that a court's contributory infringement inquiry should focus on 'whether the accused products can be used for purposes other than infringement." *Id.* The court further concluded that if a product is equally capable of both infringing and substantial non-infringing uses, there is no claim for contributory infringement. *Id.*

Here, medical practitioners could use the AB Max for the treatment of posterior blepharitis, which would infringe on Defendant's '718 patent. However, practitioners could also solely use the AB Max for the treatment of anterior blepharitis, which does not infringe on the '718 patent. Therefore, pursuant to *In re Bill Lading*, this Court concludes that Plaintiff has demonstrated a strong

likelihood of success that it is not liable for contributory infringement of the '718 patent because the AB Max has a substantial non-infringing use.

### iii. Medical Practitioner Liability

Plaintiff argues that medical practitioners, who are its customers for the AB Max, are immune from liability for patent infringement under the statute. Dkt. No. 11, pg. 27 (Pg. ID 526). Defendant responds that users of the AB Max are not immune from liability because 1) consumers other than medical practitioners can use the AB Max; 2) Myco does not have an approved medical device; and 3) users of the AB Max are likely infringing one of Defendant's design patents because the AB Max tip (swab) is likely infringing. Dkt. No. 17, pgs. 31–32 (Pg. ID 1035–36).

The Patent Act states that "[w]ith respect to a medical practitioner's performance of a medical activity that constitutes an infringement under section 271(a) or (b), the provisions of sections 281, 283, 284, and 285 shall not apply against the medical practitioner or against a related health care entity with respect to such medical activity." 35 U.S.C. § 287(c)(1).

Pursuant to the Patent Act, this Court concludes that there is a strong likelihood of success on Myco's contention that its medical practitioner customers are immune from suit. Further, this Court concluded above that there is a strong likelihood of success on Plaintiff's claim that the AB Max does not directly or

indirectly infringe the '718 patent. Therefore, there is also a strong likelihood of success on Plaintiff's contention that Myco customers who are not medical practitioners are also not liable for infringement.

To summarize, this Court has concluded that there is a strong likelihood of success that the AB Max does not directly infringe Defendant's '718 patent because the AB Max is for the treatment of anterior blepharitis, which does not include contact of the AB Max to the inner edge of the eyelid. There is also a strong likelihood of success on the contention that Plaintiff is not liable for active inducement because the record does not demonstrate the existence of direct patent infringement. Additionally, there is a strong likelihood of success for the contention that Plaintiff is not liable for contributory infringement because the AB Max has a substantial non-infringing use. Lastly, there is a strong likelihood of success on the proposition that customers of the AB Max who are medical practitioners are not liable pursuant to § 287(c)(1) of the Patent Act. For these reasons, the Court concludes that the record demonstrates a likelihood of success that Plaintiff's AB Max does not infringe the Blephex.

b.  Unfair Competition Claims

Plaintiff's amended complaint also brings federal and common law unfair competition claims. Dkt. No. 9, pgs. 8–9 (Pg. ID 30–31). Plaintiff asserts that Dr. Rynerson asserted objectively baseless claims of patent infringement at the SECO

conference; therefore; Plaintiff has demonstrated a likelihood of success on its

federal unfair competition claims. Dkt. No. 11, pg. 29 (Pg. ID 528).

To prevail on a federal unfair competition claim, a plaintiff must establish that:

(1) the defendant has made a false or misleading statement of fact concerning his
product or another's; (2) the statement actually or tends to deceive a substantial
portion of the intended audience; (3) the statement is material in that it will likely
influence the deceived consumer's purchasing decisions; (4) the statement was
introduced into interstate commerce; and (5) there is some causal link between
the challenged statement and harm to the plaintiff.

*Eastman Outdoors, Inc. v. Blackhawk Arrow Co.*, 329 F. Supp. 2d 955, 959 (E.D.

Mich. 2004).

Here, there is a question of fact about Dr. Rynerson's statements at the SECO

conference. According to Plaintiff, Dr. Rynerson approached the Myco booth at

the SECO conference and stated that the AB Max infringes on his Blephex patent.

*Id.* at pg. 18 (Pg. ID 66). Dr. Rynerson allegedly made this accusation loudly and

within earshot of prospective customers. *Id.* Plaintiff alleges that Dr. Rynerson

returned to his BlephEx booth and told optometrists that Myco's AB Max was

infringing on his patents and that he would take action. *Id.* at pg. 19 (Pg. ID 67).

According to Dr. Rynerson, he approached the Myco booth at the SECO

conference and asked Choate if he thought the AB Max might infringe Rynerson's

patent. Dkt. No. 15-1, pg. 5 (Pg. ID 996). Rynerson asserts that he did not threaten

to sue anyone for patent infringement. *Id.* He further states that to the best of his

recollection, he did not tell doctors and practitioners visiting the BlephEx booth that the AB Max infringed on his patent. *Id.* at pg. 15 (Pg. ID 977).

The record does not establish that Plaintiff's version of the facts is more credible or accurate that Defendant's. Therefore, this Court cannot establish that Defendant made any false or misleading statements about the AB Max. For this reason, the Court concludes that Plaintiff has not demonstrated a strong likelihood of success on its unfair competition claims.

This Court has concluded that Plaintiff has demonstrated a strong likelihood of success on Count I of its amended complaint, which requests a declaratory judgment of non-infringement. Count II of Plaintiff's complaint seeks a declaratory judgment that the claims of the '718 patent are invalid pursuant to 35 U.S.C. 102, 103, and 112. Dkt. No. 9, pg. 7 (Pg. ID 29). Neither party briefed this issue, therefore the Court is not clear about the argument for this claim. Lastly, this Court concluded that Plaintiff does not demonstrate a strong likelihood of success on its unfair competition claims. Plaintiff has thus demonstrated a strong likelihood of success on Count I of its amended complaint seeking a declaratory judgment of non-infringement. Notably, Count I of Plaintiff's amended complaint is the most material to its request for a preliminary injunction because Plaintiff requests that this Court enjoin Defendant from making allegations of patent infringement to its customers.

2.  Irreparable Harm

To satisfy the second factor, a party must demonstrate that unless the injunction is granted, he or she will suffer "'actual and imminent harm' rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "[H]arm is not irreparable if it is fully compensable by money damages . . . ." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). An injury cannot be fully compensable by money damages if damages are difficult to calculate based upon the nature of the plaintiff's loss. *Id.*

Plaintiff asserts that it will lose sales and suffer harm to its goodwill and reputation without a preliminary injunction. Dkt. No. 11, pg. 31 (Pg. ID 530). Defendant argues that Plaintiff does not provide evidence of any harm that it would endure absent a preliminary injunction. Dkt. No. 17, pg. 35 (Pg. ID 1039). Defendant contends that any harm Plaintiff asserts is speculative because Plaintiff does not present evidence of its lost sales. *Id.*

This Court has concluded that Plaintiff has shown a strong likelihood of success on Count I of its complaint seeking a declaratory judgment of non-infringement. Therefore, any claims by Defendant that Plaintiff is infringing its patent would be harmful to Plaintiff's reputation. For these reasons, the Court concludes that Plaintiff will suffer irreparable harm absent a preliminary injunction.

3.  Substantial Harm to Others

The third factor requires this Court to consider whether the issuance of the injunction would cause substantial harm to others.

Plaintiff contends that the balance of harms favors a preliminary injunction because an injunction would prevent Defendant from interfering with fair competition. Dkt. No. 11, pg. 32 (Pg. ID 531). Defendant asserts that it will be harmed by a preliminary injunction because it will lose sales and its reputation will be damaged. Dkt. No. 17, pg. 35 (Pg. ID 1039).

This Court has concluded that questions of fact remain about whether Defendant is interfering with unfair competition. Therefore, it is unclear whether a preliminary injunction would prevent Defendant from interfering with fair competition like Plaintiff asserts. In addition, Defendant does not produce evidence to support its contention that it will lose sales if this Court issues a preliminary injunction. Damage to Defendant's reputation that may result from the issuance of a preliminary injunction is also speculative.

For these reasons, the Court finds that Defendant will not be substantially harmed if this Court issues a preliminary injunction.

4.  Public Interest

The final factor to consider is "whether the public interest would be served by granting the . . . preliminary injunction." *Abney*, 443 F.3d at 552–53.

Plaintiff argues that public interest weighs in favor of granting a preliminary injunction because the law promotes free and open competition. Dkt. No. 11, pg. 32 (Pg. ID 531). Defendant states that Plaintiff is infringing its patent and public policy does not favor allowing intentional patent infringement. Dkt. No. 17, pg. 35 (Pg. ID 1039).

This Court has concluded that there is a likelihood of success on Count I of Plaintiff's amended complaint seeking a declaratory judgment of non-infringement. However, this Court found that questions of fact preclude finding a likelihood of success on the merits of Plaintiff's unfair competition claims. Thus the Court concludes that public interest factors weigh in favor of both parties, leaving this factor neutral.

5. Preliminary Injunction Conclusion

To summarize, this Court found that Plaintiff has demonstrated a strong likelihood of success that it is not infringing Defendant's patent. Second, this Court has found that Plaintiff has shown that it will suffer irreparable harm absent a preliminary injunction. Third, the Court concluded that Defendant has not shown that it will face substantial harm if this Court issues a preliminary injunction. Lastly, the Court has found that both parties have public interest considerations that weigh in their favor, leaving this factor neutral. Balancing these factors, this Court concludes that the issuance of a preliminary injunction is the proper remedy.

This Court will issue a preliminary injunction enjoining Defendant, its officers, agents, and those in active concert with Defendant from making allegations of patent infringement and threatening litigation against Plaintiff's potential customers.

## V. CONCLUSION

For the reasons discussed herein, the Court will grant Plaintiff's Amended Motion for Preliminary Injunction. [#11]. Defendant, its officers, agents, and those in active concert with Defendant are enjoined from making allegations of patent infringement and threatening litigation against Plaintiff's potential customers. Plaintiff's Motion to Consolidate Preliminary Injunction Hearing with Trial [#54] is accordingly denied as moot. Lastly, the Court will deny Defendant's Motion for Leave to Supplement [#35] and deny Plaintiff's Motion for Leave to Supplement [#36].

SO ORDERED.

Dated:        August 27, 2019

                                        s/Gershwin A. Drain
                                        HON. GERSHWIN A. DRAIN
                                        United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 27, 2019, by electronic and/or ordinary mail.

/s/ Teresa McGovern

Case Manager